# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ALLISON S. WOODFILL,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | Case No. 08-cv-1790-CRD-JPD<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Allison S. Woodfill appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED WITH DIRECTIONS TO AWARD BENEFITS.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a 45-year-old woman with a GED education. Administrative Record ("AR") at 75, 106. Her past work experience includes employment as a hostess, small parts

assembler, cashier, garment inspector, and aircraft cleaner. AR at 110. Plaintiff was last gainfully employed on July 2, 1996. AR at 31.

Plaintiff asserts that she is disabled due to bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), and suicidal tendencies. AR at 78, 89. She asserts a disability onset date of July 2, 1996. AR at 75, 89. The date plaintiff was last insured was March 31, 2003. AR at 29.

On March 13, 1997, plaintiff filed an application for DIB, which was denied, and she did not appeal. AR at 75-77. She again applied for DIB on November 21, 1998, requesting a reopening of her prior application. AR at 78-80. The second application was denied initially and on reconsideration. AR at 28, 47-54. Plaintiff requested a hearing, which took place on July 20, 2000. AR at 433. On September 19, 2000, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on that finding. *Id.*

Plaintiff's administrative appeal of the ALJ's decision resulted in a remand by the Appeals Council for further proceedings. AR at 28, 462-64. The further proceedings were held before a different ALJ on September 11, 2002. AR at 558. On October 24, 2002, the second ALJ issued a decision also concluding that plaintiff was not disabled. AR at 487-96. The Appeals Council affirmed. AR at 28.

Plaintiff appealed to the United States District Court for the Western District of Washington and the parties stipulated to remand the matter for further proceedings. AR at 501-02. The Order of Remand was issued on May 11, 2005. *Id.* On November 29, 2006, a third ALJ conducted a third hearing at which he heard testimony from plaintiff, a medical expert, and a vocational expert. AR at 838-70. On June 1, 2007, the ALJ issued a decision also finding plaintiff not disabled. AR at 28-44. On October 16, 2008, the Appeals Council declined to assume jurisdiction, AR at 11-14, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 12, 2008, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

### III. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V. EVALUATING DISABILITY

As the claimant, plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI. DECISION BELOW

On June 1, 2007, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2003.

2. The claimant has not engaged in substantial gainful activity since July 2, 1996, the alleged onset date.

3. The claimant has the following severe mental health impairments: borderline intellectual functioning, personality disorder, affective disorders (dysthymia vs. depression vs. bipolar), anxiety disorders; history of post traumatic stress disorder (PTSD); a history of illicit drug use and alcohol abuse; and food issues. As to physical impairments, she is obese[,] has diabetes and the possibility of carpal tunnel syndrome.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: no physical limitations other than a limitation of no heights or hazards and no ladders/ropes/scaffolds and limited to frequent, rather than constant, handling and fingering. As to mental limitations, the claimant is limited to simple, repetitive work and to work environments with no public contact.

6. The claimant is capable of performing her past relevant work as a small products assembler or a clothing inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 1996 through the date of this decision (20 CFR 404.1520(f)).

AR at 31-44.

## VII. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in his evaluation of the medical opinions and medical evidence in the record.

2. Whether the ALJ erred in his evaluation of plaintiff's credibility.

3. Whether the ALJ improperly dismissed the lay witness statements regarding plaintiff's condition prior to March 31, 2003, the date she was last insured.

4. Whether the hypothetical posed to the vocational expert sufficiently characterized plaintiff's residual functioning capacity for work activities prior to March 31, 2003.

5. What is the proper remedy if the Commissioner's decision is not affirmed.

Dkt. Nos. 7, 8. Because the ALJ erred regarding the evaluation of the medical evidence and the evaluation of plaintiff's credibility, issues 1, 2 and 5 are the determinative issues.

## VIII. DISCUSSION

### A. The ALJ Erred in his Evaluation of the Medical Opinions and Medical Evidence in the Record

In 1996, plaintiff was raped. This resulted in plaintiff developing substantial mental impairments. In her 2002 hearing, the medical expert called to testify concluded that while the plaintiff's condition did not meet a Listing at Step 2, it was possible that her impairments equaled a Listing. In her 2006 hearing, the medical expert called to testify at her hearing readily opined that plaintiff was disabled because she met a Listing at Step 2. In addition, medical reports from her treating physicians support her claim of disability. As discussed below, the ALJ did not properly review or evaluate the medical evidence of record, and his opinion is not supported by substantial evidence.

#### 1. *Standard of Review for Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. Dr. Breen

Alan Breen, Ph.D., performed an extensive psychological evaluation of plaintiff on August 2, 2006. Dr. Breen's testing techniques included a clinical interview, record review, Wechsler Adult Intelligence Scale-III, Wechsler Memory Scale-III, Trail Making Test, and MMPI-2. AR at 786. Based on his testing, Dr. Breen diagnosed plaintiff with major depression in substantial remission, superimposed upon dysthymia; chronic post-traumatic stress; generalized anxiety disorder; anxiety not otherwise specified (limited range of panic attacks without agoraphobia). AR at 789. Dr. Breen noted:

> Allowing for overemphasis on difficulty, the profile is suggestive of a woman with severe depression, anxiety, and a pattern of disorganized thinking. She does not feel in control and likely has limited coping resources. She tends to be passive and socially isolated with low energy. This is somebody who is not able to think about the long-term, and instead, takes things one day at a time. Her ability to follow-through with long term plans is quite poor. She is distrustful of others, alienated from self and others, and likely to have a wide variety of health complaints. Self-esteem is low. *The probability is fairly high that psychological difficulties would adversely impact her ability to remain employed.*

AR at 788-89 (emphasis added). Dr. Breen assessed plaintiff with a GAF score of 45.[2] *Id*. He also noted a "marked" restriction on her ability to interact with the public and respond appropriately to work pressures in a usual work setting. AR at 793.

The ALJ rejected the marked restriction in her ability to respond to work pressures and Dr. Breen's GAF rating. AR at 42. He based this on his conclusion that the assessment was not consistent with on-going Group Health treatment records. *Id*.

However, this is a selective reading of the Group Health records, and fails to take into account the waxing and waning often involved with mental impairments. After her rape, plaintiff was seen by counselors at Group Health for sleep disturbance, isolation/withdrawal, recurring guilt, significant low self-esteem, decreased energy and problems concentrating. AR at 366. While different medications were applied, her GAF assessment was 45. In 1997, the plaintiff was hospitalized with what the ALJ categorized as "a small setback." AR at 34. This "small setback" was her admission for emergency psychiatric treatment to Overlake Hospital for major depressive episode and delayed PTSD. She asked her husband to help end her life by suffocation. She was diagnosed with a GAF "in the 40 range." AR at 202. She was kept in

---

[2] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id*. at 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as lack of friends and/or the inability to keep a job. *Id*.

the hospital for several days, and then discharged to continue a partial-day hospitalization plan. AR at 200.

In 1998, Group Health doctors noted she was bipolar, with mostly depressed symptoms of PTSD with agitation. AR at 303. While at Group Health, several psychological tests were administered. In 1999, an examining psychologist, Robert Hatton who administered the tests concluded that "the prominence of her present depression and suicidal feelings certainly supports a diagnosis of major depression. . . . The degree of personality disturbance certainly indicates the possibility of long-term disability and a limited prognosis for improvement." AR at 270.

There is no dispute that some Group Health records during the time period 1997-2006 show that at times, plaintiff was stabilizing and willing to confront issues that led to her mental impairments. There is also no dispute that records during the same time reflected long-standing and continued anxiety and relapses into depression. *See e.g.,* AR at 703, 719, 728. Moreover, Dr. Breen concluded that the test results he obtained were consistent with the 2002 report issued by Dr. Washburn, suggesting a profile of a woman with severe depression, anxiety, and a pattern of disorganized thinking who did not feel in control and likely had limited coping resources. AR at 788.

Dr. Breen's report was thorough and as discussed below, consistent with other medical providers. To dismiss it on the basis that it does not correspond to some of the ongoing reports of treatment, singling out favorable notes and disregarding unfavorable reports, fails to recognize the waxing and waning nature of mental impairments. The ALJ also purported to discount the report because he believed it, like many of the other reports were based solely on self-reports made by the plaintiff. Because the ALJ found the plaintiff to be non-credible, he jumped to the conclusion that plaintiff must have successfully misled several physicians, including Dr. Breen. However, in jumping to this conclusion, the ALJ ignores the fact that Dr. Breen's reports were not based solely on self-reporting, and therefore cannot be so easily

dismissed. Instead, Dr. Breen administered testing that was self-validating in support of his overall conclusions. AR at 787. The testing results received were consistent with the 2002 testing results noted by Dr. Washburn. The ALJ did not provide specific and legitimate reasons supported by the record to reject the opinions of Dr. Breen.

### *3.  Dr. Washburn*

Richard Washburn, Ph.D., performed a consultative psychological evaluation of Plaintiff on July 12, 1999 and March 20, 2002. AR at 414-21, 691-97. In his first evaluation, Dr. Washburn's testing techniques included a diagnostic interview with a Mental Status Examination, Millon Clinical Multiaxial Inventory-III, Minnesota Multiphase Personality Inventory, Burns Anxiety Inventory, and the Burns Depression Checklist. AR at 414. The tests were deemed to have produced a profile that was valid for interpretation. AR at 418. Dr. Washburn diagnosed plaintiff in the first evaluation with chronic PTSD; major depression; dysthymic disorder; and borderline personality disorder with avoidant, dependent, passive-aggressive and self-defeating features. AR at 420. Dr. Washburn gave plaintiff a GAF score of 50. *Id.* He concluded that plaintiff "is experiencing chronic symptoms of severe depression and anxiety that seriously curtail normal social activities including full time gainful employment." AR at 421. In the second evaluation, Dr. Washburn utilized a diagnostic interview with a Mental Status Examination, Millon Clinical Multiaxial Inventory-III, Minnesota Multiphase Personality Inventory, Shipley Institute of Living Scale, and the Trail Making Test. AR at 691. The results produced what Dr. Washburn considered to be an elevated test profile that was valid for interpretation. AR at 695. He concluded that she had a "markedly deflated sense of self-esteem and her expectation of failure constrains her efforts to act with independence. . . . She shows a diminished capacity for pleasure, preoccupation, lessened energy and adequacy, pessimism and suicidal ideation." AR at 696. Dr. Washburn concluded:

> Mrs. Woodfill's psychological problems would make it difficult for her to concentrate on work activities, and deal with the normal stress of work requirements. So much of her emotional and physical energy is diverted into anxiety that little remains for more constructive activity. Her relationships with co-workers, supervisors and the public would add to her level of anxiety result in increased introversion. Her generally poor emotional coping skills would likely result in episodes of uncontrolled crying under even minimal stress.
>
> *Based on her lack of emotional stability, it is extremely unlikely that Mrs. Woodfill would be able to find and retain full-time, gainful employment.* Any attempt to work before she has satisfactorily resolved the emotional trauma she has experienced would likely place her under such stress that her depression and anxiety would increase.

AR at 698 (emphasis added). As noted above, the 2006 tests administered by Dr. Breen produced results very similar to those reported by Dr. Washburn.

The ALJ rejected the first report of Dr. Washburn. He stated that Dr. Washburn reviewed Mr. Hatton's report and did some of his own testing, but did not review the reports of Group Health. AR at 40. He rejected Dr. Washburn's initial conclusions because plaintiff was disinterested in continuing certain therapy, that she went on a vacation, and that Dr. Washburn's description of her physical appearance was not consistent with the severity of the emotional impairments she suffered.

Once again, the ALJ's justifications do not constitute substantial evidence to reject the findings of Dr. Washburn. First, the non-compliance reference is a one-time chart note indicating that she did not want to continue with "group" therapy. AR at 439. Instead, she opted to receive direct individual therapy for the more than ten-year period of record in this case. Moreover, as the Ninth Circuit has noted: "we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Commissioner*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999). Second, the ALJ failed to explain the correlation between going on a family vacation and full time employment, or how going on

a family vacation would contradict Dr. Washburn's opinion that plaintiff would be unable to find and retain full-time, gainful employment. During her vacations, she would often remained alone in her hotel rooms. AR at 576. Finally, plaintiff's physical appearance has nothing to do with her mental impairments. Indeed, Dr. Washburn did conclude that plaintiff maintained good eye contact during the interview and had adequate appearance and hygiene. However, if it were possible to tell something about a person's ability to function in the workplace by personal appearance and eye contact, then clinical testing would never be necessary. Once again, the ALJ fails to make any correlation between these facts and his ultimate conclusion that Dr. Washburn opinions, and the tests he conducted that support those opinions are not worthy of respect.

As for Dr. Washburn's 2002 assessment, the ALJ gave little weight to those opinions because he felt they were inconsistent with plaintiff's activities around that time, such as remodeling her home, going on vacation, and having family members visit. AR at 41. The ALJ failed to mention how the tests which were administered were consistent with the results of the 1998 tests administered by Dr. Washburn or the 2006 tests administered by Dr. Breen. Moreover, the limitations of plaintiff's activities during her vacations were not discussed. The ALJ did not provide specific and legitimate reasons supported by the record to reject the opinions of Dr. Washburn.

*4. Dr. Toews*

Dr. Jay Toews testified as the psychological medical expert at plaintiff's third hearing which was held on November 29, 2006. AR at 838. At the hearing, Dr. Toews testified that based on plaintiff's records, the plaintiff satisfied the 12.04(C)(2) criteria of the Major Depressive Disorder listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 841. Dr. Toews testified that plaintiff's symptoms satisfied the criteria of 12.04(C)(2), a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicated to cause the individual to

decompensate. *Id.* Dr. Toews also testified that a person with plaintiff's GAF score of 54 would not be able to sustain employment, but pointed out that GAF scores are "point in time estimates." AR at 845.

The ALJ rejected Dr. Toews' opinion that plaintiff had an impairment that met the Affective Disorder impairment found in 12.04(C)(2) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Dr. Toews' testimony was inconsistent with and not supported by contemporaneous information found in the record. AR at 33. The ALJ cited extensively to plaintiff's longitudinal treatment records from Group Health Cooperative Mental Health, where she has been treated since October 1996, and to examining physicians' observations and findings. The ALJ specifically found that plaintiff was "not a person susceptible [to] decompensation resulting from change" as evidenced by her activities such as taking multiple vacations, home remodeling, and having regular visitors; her rejection of continued cognitive therapy; her self-reporting of improvement; and the consistency of the examining physicians' and treatment counselors' observations of plaintiff's appearance and mood as being normal. AR at 36.

It is unnecessary to reach the issue of whether the ALJ erred in rejecting the conclusion of Dr. Toews that plaintiff met a Listing at Step 2. Whether plaintiff's impairments actually reach the level of a Listing or not, Dr. Toews's testimony provides powerful backup for the opinions offered by the other medical professionals, and their conclusions. For example, Dr. Toews testified that the plaintiff's condition was chronic, and given the nature of the diagnoses and the associated personality complicating the diagnoses he did not think there would have been much of a change. He also testified that a person with a GAF score of 54 would not be able to sustain employment, and that the clinical impressions of Dr. Washburn, Dr. Breen, Dr. Jarvis, and Mr. Hatton were consistent with the data they presented. AR at 843. In this regard, Dr. Toews's testimony is substantial evidence that supports the opinions of Drs. Breen, Washburn and Jarvis.

### 5. Dr. Johnson

Dr. Richard Johnson testified as the medical expert at plaintiff's second hearing on September 11, 2002. AR at 539-543, 558.[3] Dr. Johnson testified that he agreed with Dr. Jarvis and Dr. Washburn that plaintiff had severe limitations in her motivation to seek and persist with employment, and that she had mild to moderate limitations in her ability to respond appropriately or to tolerate the pressures and expectations of a normal work setting. AR at 542. Dr. Johnson also testified that plaintiff arguably equaled a Listing at Step 2. *Id.*

The ALJ failed to discuss Dr. Johnson's testimony. The Commissioner argues it was unnecessary, because after Dr. Johnson testified, the case was appealed and remanded, and another medical expert, Dr. Toews evaluated the record. Because the hearing did require a new expert, the opinions of Dr. Johnson would be considered as a non-treating, non-examining physician. It is unnecessary to decide whether the failure to discuss the opinion was error in itself. Like the testimony of medical expert Dr. Toews, Dr. Johnson's testimony constitutes substantial evidence in support of the opinions of Drs. Breen, Washburn and Jarvis.

### 6. Dr. Jarvis

David Jarvis, M.D., performed a consultative psychiatric evaluation of plaintiff on April 12, 2002. AR at 614. Dr. Jarvis utilized a psychiatric evaluation with a Mental Status Exam and reviewed Dr. Washburn's evaluations in order to diagnose plaintiff. *Id.* Dr. Jarvis diagnosed plaintiff with dysthymic disorder with early onset; anxiety disorder not otherwise specified with obsessive, generalized, panic and agoraphobic features; and personality disorder not otherwise specified with dependent and avoidant features. AR at 621. Dr. Jarvis gave plaintiff a GAF score of 54.

The ALJ discussed Dr. Jarvis's clinical findings at step 2 and step 3 of the sequential evaluation process, and when he determined plaintiff's residual functional capacity. More

---

[3] Dr. Johnson's testimony from the second ALJ hearing held on September 11, 2002 incorrectly appears in the transcript of the first ALJ hearing held on July 20, 2000.

specifically, the ALJ included Dr. Jarvis's diagnoses in his assessment of plaintiff's severe mental impairments at step 2. AR at 31. The ALJ specifically relied on some of Dr. Jarvis's findings at step 3 in order to identify which A criteria from 20 C.F.R. Part 404, Subpart P, Appendix 1 applied to plaintiff. AR at 32. The ALJ also discussed Dr. Jarvis's findings in detail when determining plaintiff's residual functional capacity. AR at 42. However, the ALJ did not accept all of Dr. Jarvis's finding, particularly his finding that plaintiff's combination of disorders created severe limitations in her motivation to persist and seek employment. AR at 42. The ALJ decided that Dr. Jarvis was wrong in his assessment that plaintiff led an inactive life, and speculated that had Dr. Jarvis known the extent of plaintiff's daily activities during this period, it was unlikely that Dr. Jarvis would have given much weight to plaintiff's self-reporting. AR at 42. The speculation that is the basis for the ALJ's conclusion to reject Dr. Jarvis's opinions does not rise to the level of specific and legitimate reasons to reject the opinions offered by Dr. Jarvis. Although plaintiff made strong strides toward stability, due in no small part to the role provided by her husband, the ALJ has failed to indicate how any of these strides, which are very dependent upon the plaintiff's husband, will assist her in the workplace, where he will not be present.

### 7. *Summary Regarding Medical Evidence*

The ALJ committed numerous errors in his evaluation of the many medical opinions that indicated the plaintiff suffered from and continues to suffer from substantial mental limitations as a consequence of her sexual assault. The reasons proffered by the ALJ do not withstand scrutiny, and do not permit this Court to conclude that they constitute substantial evidence as that term is defined. Accordingly, this case must be remanded.

### B. The ALJ Erred in his Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in his credibility analysis of plaintiff's testimony. Plaintiff alleges that her ability to engage in daily activities and occasional weekend trips do not support the ALJ's finding that she can engage in regular work activities. Plaintiff claims

REPORT AND RECOMMENDATION
PAGE - 16

that the ALJ did not offer clear and convincing or legitimate reasons for rejecting her testimony.

Credibility determinations are particularly the province of the ALJ. *Andrews*, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective testimony, he must articulate specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." *Greger*, 464 F.3d at 972. General findings are insufficient. *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between his testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id.*

Here, the ALJ found that although plaintiff's medically determinable impairments could reasonably be expected to cause some of plaintiff's symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. AR at 39. Because there was no affirmative evidence that plaintiff was malingering,

REPORT AND RECOMMENDATION
PAGE - 17

the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

The ALJ supported his adverse credibility decision on four bases. First, the ALJ found that Plaintiff self-reported to examining physicians greater symptoms than what was shown by her daily activities and the ongoing assessments of her treatment providers. AR at 39. The errors in his analysis in this area have been discussed above. Second, the ALJ found that the evidence in the record strongly suggested that plaintiff's lack of employment was for non-disability reasons (*e.g.*, lack of motivation, secondary gain, etc.). The ALJ stated that her husband willingly supports her, that she worked prior to the time they were married, that her mother in law is on social security disability, and that she would like to have some of her own spending money. AR at 39. Many of the treatment providers recognized that her husband was a vital part to her recovering from her attack, and that her husband did not want additional stress for her. *See e.g.,* AR at 266, 294, 306. However, the willingness of a spouse to support his or her spouse who has been through such a traumatic event as plaintiff sustained hardly seems a basis to draw an inference of lack of motivation. Moreover, there is also evidence in the record that strongly contradicts the suggestion that her husband did not want her to go back to work. AR at 719. This hardly reflects a lack of motivation on her part. Third, the ALJ found that plaintiff was not always compliant with her treatment providers. AR at 39. As discussed above, the ten years of plaintiff's medical records indicate perhaps two reported instances of questions raised about compliance, spaced four years apart during the course of a ten year record of therapy. This does not warrant a non-compliance finding. Fourth, the ALJ questioned plaintiff's veracity because her self-reporting to examining physicians allegedly conflicts with contemporaneous treatment notes from providers at Group Health Cooperative Mental Health. *Id.* This ignores the issues of waxing and waning discussed above, and raises the issues of selective choices of the Group Health records. It also ignores the fact that many of the examining physicians administered tests that contained self-validation measures to

screen out over-reporting, something the ALJ failed to discuss when discounting the tests. The ALJ's adverse credibility decision is not supported by substantial evidence.

### C. This Case Should Be Remanded for Award of Benefits

As discussed above, remand for an award of benefits is appropriate when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*McCartey*, 298 F.3d at 1076. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Breen, Washburn, Jarvis and Toews (and for ignoring Dr. Johnson's conclusion). The opinions are remarkably consistent with each other. In addition, the ALJ's adverse credibility assessment cannot be sustained. If the opinions of Drs. Breen, Washburn, Jarvis and Toews are properly credited and combined with the testimony of the plaintiff, there would be no outstanding issues to be resolved and it would be clear that the ALJ would be required to find the plaintiff disabled.

Plaintiff's initial application was filed 12 years ago. She has been through 3 administrative hearings already. The Commissioner suggests that the step 5 analysis needs to be fully considered by an ALJ (despite three chances to do so earlier) and there just might be some limitations resulting from illicit drug and alcohol abuse. Once again, there is nothing that would support such a request in the record. The record amply demonstrates that plaintiff stopped drinking years ago, and there is no indication of illicit drug use in the records. After the passage of twelve years, to delay any further would be unconscionable.

//

//

//

//

REPORT AND RECOMMENDATION
PAGE - 19

## IX. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for AWARD OF BENEFITS. A proposed Order accompanies this Report and Recommendation.

DATED this 8th day of September, 2009.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge